UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC RICHESON, | ) | CASE NO. 4:09cv2284 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| SELECT COMFORT RETAIL CORP., | ) | |
| | ) | |
| | ) | |
| DEFENDANT/ | ) | |
| THIRD-PARTY PLAINTIFF, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **AND ORDER** |
| | ) | |
| LISA GOTTSCHALT, | ) | |
| | ) | |
| THIRD-PARTY DEFENDANT. | ) | |

While the Court had cross-motions for summary judgment under advisement, on September 22, 2011, it raised *sua sponte* the question of whether plaintiff's complaint should be dismissed for failure to state a claim because it seeks civil damages for an alleged violation of a criminal statute. Pursuant to Fed. R. Civ. P. 56(f)(2), the Court gave notice of this issue to the parties and permitted them to file briefs by October 7, 2011. Those briefs have been filed and considered. (Doc. Nos. 56 and 57.)

For the reasons discussed below, plaintiff's entire complaint is **DISMISSED** for failure to state a claim,[1] as is the first claim for relief in the Counterclaim/Third-Party Complaint

---

[1] The Amended Complaint contains three counts. The second and third counts are premised on the improper private right of action in the first count brought under O.R.C. § 2913.49. Since the first count fails, all counts fail.

and the third claim for relief (civil conspiracy) premised on the dismissed first claim. Defendant's motion to dismiss or, in the alternative, for summary judgment (Doc. No. 41) is, therefore, **DENIED AS MOOT.**[2] Plaintiff's motion for summary judgment (Doc. No. 42) is **DENIED**. The case shall proceed to trial solely on the second claim for relief in the defendant's Counterclaim/Third-Party Complaint (unjust enrichment).[3]

---

[2] Defendant did not seek summary judgment on its counterclaim/third-party complaint. However, in addition to summary judgment on plaintiff's claims, defendant seeks dismissal for lack of subject matter jurisdiction. (Doc. No. 41, Part 1.) Defendant argues that plaintiff cannot meet the requisite jurisdictional amount to establish diversity jurisdiction. In defendant's view, only the amount of the debt, which is less than $12,000, is the amount in controversy. According to plaintiff, he is entitled "to compensation for all injuries sustained." (Opposition, Doc. No. 47, at 2, citing *Whitaker v. M.T. Automotive*, 111 Ohio St.3d 177 (2006)). He further argues that he is entitled to punitive damages and attorney's fees, which should be factored in to the computation of the amount in controversy. Finally, he asserts that defendant has ignored his economic expert, David Stivers, who analyzed the "economic cost of derogatory credit as amounting to five times Mr. Richeson's annual income." (*Id.* at 3.) Although the Court has decided to dismiss plaintiff's claims on the ground of failure to state a claim, it has serious doubts as to whether plaintiff has established the requisite amount in controversy. In order to do so, since the actual debt is only about $12,000, plaintiff would need to show at least arguable entitlement to another $63,000.01 in damages. "In tort law, punitive damages are available in actions involving fraud, actual malice, oppression, or insult on the part of the defendant." *Touhey v. Ed's Tree & Turf, L.L.C.*, -- N.E.2d --, 2011 WL 2672236, at * 4 (Ohio App. 12 Dist. July 11, 2011). Plaintiff points to nothing in the record that would meet this test. With respect to attorney's fees, although Ohio usually follows the "American rule" that a prevailing party may not recover attorney's fees as costs of the litigation, there are exceptions, such as "when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees [...] or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant. *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 548 (2009). Attorney's fees may also be awarded as an element of compensatory damages if punitive damages are awarded. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552, 558 (1994). Here there is no contract or statute that provides for attorney's fees and the Court doubts that plaintiff would be entitled to punitive damages because he cannot establish "fraud, actual malice, oppression, or insult" on the part of this defendant. As to plaintiff's reliance on his expert, Select Comfort has indicated its intention to challenge the expert under *Daubert* and points to cases where this expert and opinions similar to those asserted here have been rejected by other courts. *See* Doc. No. 41-1, n.8.

[3] The Court will dismiss the first and third claims for relief and, in its response to plaintiff's motion for summary judgment, defendant withdrew its fourth claim for relief (defamation). *See* Doc. No. 44 at iii (Third Issue).

## I. PROCEDURAL BACKGROUND

Plaintiff filed a Complaint against Select Comfort on October 3, 2009 (Doc. No. 1) alleging a single cause of action under Ohio's Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.01, *et seq*. Jurisdiction was based on diversity of citizenship. After defendant filed a motion to dismiss, plaintiff filed an Amended Complaint on May 14, 2010 (Doc. No. 13). In the Amended Complaint, plaintiff alleged that a $6,500.00 consumer transaction in May 2005, carried out in his name, resulted from defendant's aiding and abetting a third-party's violation of Ohio's criminal identity fraud statute, O.R.C. § 2913.49(B) and (C), and further constituted a civil conspiracy to violate that statute. Although the OCSPA was mentioned in the introductory paragraph to the Amended Complaint, the parties filed a joint stipulation agreeing to the withdrawal as moot of defendant's pending motion to dismiss because "the Amended Complaint does not assert any claim under the OCSPA." (Doc. No. 14, ¶ 2.)

On May 28, 2010, defendant filed its Answer and Counterclaim, plus a Third-Party Complaint against Lisa Gottschalt ("Gottschalt"). (Doc. No. 16.)[4] Gottschalt was eventually served by publication (*see* Doc. No. 33); however, she has never made an appearance in the case.[5]

## II. FACTUAL BACKGROUND

In 2005, Gottschalt, Richeson's live-in girlfriend of about seven years, purchased a bed from Select Comfort and had it delivered to the home that Richeson and Gottschalt

---

[4] The Counterclaim and Third-Party Complaint allege a cause of action against Richeson and Gottschalt for identity fraud in violation of O.R.C. § 2913.49(D) and (E), as well as unjust enrichment and conspiracy against both of them, plus defamation against Richeson alone. As noted elsewhere herein, defendant has withdrawn the defamation claim and the same is, therefore, dismissed.

[5] Despite that fact, defendant has not moved for default judgment against Gottschalt.

shared.[6] At the time, Richeson had turned over to Gottschalt all responsibility for the household finances, believing that she was a Certified Public Accountant. Gottschalt used information supplied by Richeson to prepare his annual tax returns and used income from their joint earnings to pay household bills. Richeson had absolutely no involvement in their finances. (Richeson Dep. at 12-13, 36-39). On one occasion, Richeson executed a limited power of attorney to allow Gottschalt to engage in a financing transaction for the purchase of a home. (*Id*. at 12.) Richeson never even reviewed his own mail and he never questioned Gottschalt regarding her purchases or her handling of the finances. (Richeson Dep. at 38-39, 115-17, 239-40.)

According to Select Comfort's customer service records, on May 14, 2005, a person from Richeson's household inquired about the availability of "one year same as cash" financing. (McDuffie Decl. ¶¶ 5, 7 and Att. 1.) Such financing was available at the time through a credit account offered by GE Money Bank that was co-branded with Select Comfort. (*Id*. ¶ 9.) On or about May 21, 2005, Gottschalt visited the Select Comfort store in Youngstown, Ohio and presented a signed application for the GE Money Bank account. The application was purportedly made by Richeson as it had his name and address and other information about him.[7] (Resp. to Interrog. 2; Richeson Dep. at 156, 184-87, 228-32 and Ex. 10.) Richeson claims that Select Comfort failed to check a driver's license in the course of approving the application. For purposes of the instant motions, Select Comfort does not dispute that neither Richeson nor his driver's license were in the store on May 21, 2005.

---

[6] There were also three minor children living in the home with them, one of whom was the child of Richeson and Gottschalt.

[7] Select Comfort states: "The Application contained: (1) Eric Richeson's correct name, social security number, home address, and employer; (2) Lisa Gottschalt's e-mail address; (3) unidentified phone numbers for applicant's work, home and closest relative; (4) an inaccurate figure for the applicant's income; and (5) an illegible signature for the applicant." (Motion, Doc. No. 41-1 at 3.)

GE Money Bank authorized a $6,500.00 credit limit in Richeson's name for the purchase of merchandise at Select Comfort. Gottschalt then purchased a queen-size Sleep Number mattress, a Precision Adjustable bed foundation, and bedding (Counterclaim, Doc. No. 16, ¶ 10), which was delivered to Richeson's home. According to Richeson, this purchase was consistent with Gottschalt's normal conduct; it raised no red flags and precipitated no particular discussion between them. (Richeson Dep. at 88.)

On June 30, 2005, Select Comfort was contacted by someone at the Richeson home who claimed that the bedding purchased did not fit the mattress and requested an exchange. (McDuffie Decl. ¶ 8.) The exchange was authorized and the bedding was delivered; however, the original bedding was never returned and the new bedding was never paid for. (*Id*.). The bed and bedding was then used for the remainder of 2005, 2006, 2007, 2008, 2009, and 2010. All the merchandise still remains in Richeson's home.[8] (Admis. 1-9, Doc. No. 41-5.)

In the summer of 2006, Gottschalt and Richeson's relationship ended. Gottschalt left the home with the minor children and never returned. (Richeson Dep. at 42-45; 182-84.) Richeson then began taking responsibility for his own mail and bills. He claims that this was the first he learned about the GE Money Bank credit account. (*Id*. at 179-84.) In August 2006, Richeson wrote to GE Money Bank disputing the account and asking for proof of his obligation. (*Id*. at 210-15 and Ex. 26.) GE Money Bank supplied Richeson with a copy of the signed application. Richeson wrote again in October 2006. (*Id*., Ex. 27.)

On January 9, 2007, the fraud department of GE Money Bank concluded that Richeson's claim of fraud was a matter between Richeson and a third party, that the charges were not fraudulent or unauthorized, and that Richeson remained liable for the balance on the

---

[8] Richeson asserts that he has offered to return the bed but Select Comfort has refused to allow that.

account. (Richeson Dep. at 199-203 and Ex. 20.) Various debt collectors attempted to collect the debt; but Richeson has never paid a penny on the debt and does not intend to pay it. (*Id*. at 167-70.)

In all of his correspondence with GE Money Bank and the various debt collectors, Richeson never identified Gottschalt as the person who had fraudulently incurred the debt in his name. (Richeson Dep., Ex. 23-28.) He never contacted the police to report Gottschalt's alleged identity fraud and, aside from this lawsuit, has lodged no formal complaint or report. (*Id*. at 137.) There is no evidence in the record that anyone has ever been prosecuted or convicted of identity fraud with respect to this incident. Richeson has not demanded that Gottschalt pay the debt because it "did not cross [his] mind." (*Id*. at 24.)

## III. DISCUSSION

**A.  Private Cause of Action**

Both sides have moved for summary judgment on the merits under Fed. R. Civ. P. 56(a). However, the Court chooses to address a ground not raised by either party, namely, whether there is a private cause of action in Ohio under O.R.C. § 2913.49.[9] The Court gave the parties notice of this issue and a reasonable time to respond. *See* Fed. R. Civ. P. 56(f).

It is well-established that "[a]bsent express authorization, criminal statutes do not create civil causes of action." *Groves v. Groves*, No. 09AP-1107, 2010 WL 3722641, at * 6 (Ohio App. 10 Dist. Sept. 23 2010); *see also Biomedical Innovations, Inc. v. McLaughlin*, 103 Ohio App.3d 122, 126 (Ohio App. 10 Dist. 1995) ("claim for civil damages was inappropriate

---

[9] Strictly speaking, the question remains one for summary judgment because, to establish the factual predicate, the Court has considered matters outside the pleadings.

6

because it was based upon an alleged violation of a criminal statute under which criminal penalties result"); *see also Hershey v. Edelman*, 187 Ohio App.3d 400, 408 (Ohio App. 10 Dist. 2010) ("Defendant has pointed to no authority, and our independent research has revealed none, that supports the advancement of an independent civil claim for [criminal conduct] in a private action that is in fact an original action, without the initiation of criminal charges or criminal proceedings[.]").

The criminal statute under which plaintiff brought this civil complaint[10] is O.R.C. § 2913.49.[11] It deals with the crime of "identity fraud" and provides, in relevant part:

(A) As used in this section, "personal identifying information" includes, but is not limited to, the following: the name, address, telephone number, driver's license, driver's license number, commercial driver's license, commercial driver's license number, state identification card, state identification card number, social security card, social security number, birth certificate, place of employment, employee identification number, mother's maiden name, demand deposit account number, savings account number, money market account number, mutual fund account number, other financial account number, personal identification number, password, or credit card number of a living or dead individual.

(B) No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to do either of the following:

(1) Hold the person out to be the other person;
(2) Represent the other person's personal identifying information as the person's own personal identifying information.

(C) No person shall create, obtain, possess, or use the personal identifying information of any person with the intent to aid or abet another person in violating division (B) of this section.

---

[10] Defendant also asserted a counterclaim and third-party complaint under this Ohio statute.

[11] As already noted, although the introductory paragraph to the Amended Complaint mentions Ohio's Consumer Sales Practices Act, the parties have stipulated that Amended Complaint contains no claim under the OCSPA. (Doc. No. 14, ¶ 2.)

7

(D)     No person, with intent to defraud, shall permit another person to use the person's own personal identifying information.

(E)     No person who is permitted to use another person's personal identifying information as described in division (D) of this section shall use, obtain, or possess the other person's personal identifying information with intent to defraud any person by doing any act identified in division (B)(1) or (2) of this section.

\* \* \*

(I)     (1)     Whoever violates this section is guilty of identity fraud.

    (2)     Except as otherwise provided in this division or division (I)(3) of this section, identity fraud is a felony of the fifth degree. If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is one thousand dollars or more and is less than seven thousand five hundred dollars, except as otherwise provided in division (I)(3) of this section, identity fraud is a felony of the fourth degree. If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, except as otherwise provided in division (I)(3) of this section, identity fraud is a felony of the third degree. If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is one hundred fifty thousand dollars or more, except as otherwise provided in division (I)(3) of this section, identity fraud is a felony of the second degree.

    (3)     If the victim of the offense is an elderly person or disabled adult, a violation of this section is identity fraud against an elderly person or disabled adult. Except as otherwise provided in this division, identity fraud against an elderly person or disabled adult is a felony of the fifth degree. If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is one thousand dollars or more and is less than seven thousand five hundred dollars, identity fraud against an elderly person or disabled adult is a felony of the third degree. If the value of the credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, identity fraud against an elderly person or disabled adult is a felony of the second degree. If the value of the

> credit, property, services, debt, or other legal obligation involved in the violation or course of conduct is one hundred fifty thousand dollars or more, identity fraud against an elderly person or disabled adult is a felony of the first degree.

There is clearly no "express authorization" in this criminal statute for a private cause of action.[12]

In his brief responding to the issue raised by the Court, plaintiff argues that "the reasoning behind *Biomedical Innovations* and its progeny is flawed because 'express authorization' is not necessary. Rather, Ohio courts follow the 'intended cause of action' test first announced in *Cort v. Ash*[, 422 U.S. 66 (1975)] and subsequently followed in Ohio appellate courts to determine whether a civil cause of action is implied by statute." (Doc. No. 57, at 2.) Quoting *Nielsen v. Ford Motor Co.*, 113, Ohio App.3d 495 (Ohio App. 9 Dist. 1996), Richeson argues that:

> The three prongs of the [*Cort*] test[13] ask the following questions: (1) Are the plaintiffs in a class for whose special benefit the statute was enacted? (2) Is there any indication of legislative intent, explicit or implicit, either to create or deny a private cause of action? and (3) Is it consistent with the underlying purposes of the legislative scheme to infer such a remedy for the plaintiffs?

*Id.* at 501 (internal footnote added) (citing *Strack v. Westfield Cos.*, 33 Ohio App.3d 336, 337 (Ohio App. 9 Dist. 1986); *Elwert v. Pilot Life Ins. Co.*, 77 Ohio App.3d 529, 542 (Ohio App. 1 Dist. 1991)).

---

[12] The United States Supreme Court has noted that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979).

[13] The test actually has four prongs, but Ohio courts only apply three because "the fourth prong is reserved for interpreting federal statutes." *Wilson v. Burt*, Nos. 13096/12389, 1994 WL 723506, at * 2 (Ohio App. 2 Dist. Dec. 7, 1994).

Plaintiff argues that he meets all three prongs of the test. For purposes of this opinion, the Court will presume that he has satisfied the first and third prongs. However, the Court concludes that Richeson has not met the second, most determinative, prong of the test.[14]

Plaintiff argues with respect to the second prong of the *Cort* test that a private cause of action under § 2913.49 is implied by O.R.C. § 2305.09 ("the Limitations Statute"), which supplies the statute of limitations for certain torts. The Limitations Statute provides, in relevant part: "Except as provided for in division (C) of this section, an action for [the enumerated] causes shall be brought within four years after the cause thereof accrued[.]" Division (C) provides: "For relief on the ground of fraud, except when the cause of action is a violation of section 2913.49 of the Revised Code, in which case the action shall be brought within five years after the cause thereof accrued."

Plaintiff asserts that the "except" language in Division (C) of the Limitations Statute was added by amendment in 2008 and, "by simply amending the statute of limitations section, the General Assembly has sent a message that such an action always existed and now must be brought within five years after the cause of action thereof accrued." (Doc. No. 57, at 5.) Plaintiff also clarifies that he is not arguing that the amendment to the Limitations Statute created the private, civil cause of action; rather, he is asserting that the private cause of action already existed under the *Cort* analysis.

Plaintiff is correct that the language referring to § 2913.49 was added to the Limitations Statute by way of amendment in 2008. The legislative history states that H.B. No.

---

[14] It has been argued that the four-factor test of *Cort* has been "effectively overruled" by *Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979), which elevated "one of its four factors (congressional intent) into the determinative factor, with the other three merely indicative of its presence or absence." *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring). Further, "unless this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Northwest Airlines, Inc. v. Transport Workers Union of America*, 451 U.S. 77, 94 (1981).

46, effective August 5, 2008, amended § 2305.09 "to enact a special statute of limitations for criminal prosecutions and civil actions against identity fraud[.]" Plaintiff notes that the Legislative Service Committee's "Final Analysis" for H.B. 46 states that the bill "[p]rovides that the statute of limitations for a cause of action on the grounds of identity fraud is five years." (Doc. No. 57, at 5 n.2, quoting from the Ohio Legislative Service Commission webpage.) That "Final Analysis" also states the following, not pointed out by plaintiff: "The act provides that if the period of limitation [for a felony, misdemeanor, or minor misdemeanor, or for prosecution of certain specified offenses] has expired, prosecution for identity fraud must be commenced within five years after discovery of the offense[.]"[15]

The legislative history of the Limitations Statute, therefore, seems to suggest that there *is* a private cause of action for identity fraud, even though there is no "express authorization" in the criminal statute itself. However, as properly pointed out by the defendant, although there are no Ohio state or federal cases which address whether a private cause of action can be created by any limitations statute, other states' courts have rejected the possibility. *See, e.g.*, *Brown v. Tennessee Title Loans, Inc.*, 328 S.W.3d 850, 861 (Tenn. 2010) (rejecting locating a private right of action in a statute which contained no provision for recovery of actual damages, noting that "[p]laintiffs provide no case law to support the proposition that a statute of limitations provision should be alone sufficient to imply a private right of action"); *Lickteig v. Kolar*, 782 N.W.2d 810, 815 (Minn. 2010) ("[w]e have never held that a statute of limitations creates a cause of action"); *Sullivan v. Rich*, 878 N.E.2d 937, 940 (Mass. App. 2007) ("[a] statute of limitations does not create a cause of action that does not otherwise exist"); *Harding v. K.C. Wall*

---

[15] The "Final Analysis" may be found at the following website page from the Ohio Legislative Service Commission: http://www.lsc.state.oh.us/analyses127/08-hb46-127.pdf (last visited November 3, 2011).

*Products, Inc.*, 831 P.2d 958, 965 (Kan. 1992) ("[t]he effect of the operation of the statute of limitations is not to create a cause of action"); *Hearn by Central Bank v. Beelman Truck Co.*, 507 N.E.2d 1295, syllabus (Ill. App. 1987) ("no statutory cause of action could be created based on references in statutes of limitations"). Therefore, the Court rejects any conclusion that the mere existence of a statute of limitations mentioning § 2913.49 creates a private cause of action under that statute.

For the reasons discussed, all of plaintiff's claims, brought under O.R.C. § 2913.49, are dismissed for failure to state a claim, as are defendant's first claim for relief in the counterclaim/third-party complaint and the third claim for relief (conspiracy) premised on the dismissed first claim.

**B.     Defendant's Counterclaim/Third-Party Complaint**

Plaintiff moves for summary judgment on all four of defendant's counterclaims against him. The Court has already dismissed the counterclaim's first cause of action for failure to state a claim and the third cause of action premised on the first. In its response to plaintiff's summary judgment motion, defendant voluntarily abandoned the defamation claim in its fourth cause of action and that claim is, therefore, dismissed. All that remains of the counterclaim is a claim of unjust enrichment.

To establish a claim of unjust enrichment, three elements must be proven: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (1984) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 525 (1938)).

12

Richeson argues that "[a]ll that happened here is that Select Comfort sold a bed to [his] companion and helped her steal [his] identity to finance the transaction." (Motion, Doc. No. 42, at 14.) He asserts that no benefit was conferred on him, that he had no desire for the bed and did not want it, that it was delivered to him not at his behest, and that he has offered to return it, but Select Comfort refuses to take it and to "cancel the transaction, pursuing whatever remedy may be available to it against the actual borrower." (*Id*.)

Select Comfort argues in opposition that summary judgment in Richeson's favor on the unjust enrichment claim is precluded by sufficient record evidence to establish that Select Comfort conferred a benefit on Richeson (the bed and bedding, including the replacement bedding), that Richeson knew about the benefit, that he continued to avail himself of the benefit while refusing to pay for the merchandise, all the while burdening Select Comfort with this "frivolous" litigation. Select Comfort also argues that Richeson's assertion that he has been willing to return the merchandise is ludicrous, since Richeson knows that the merchandise has been used for several years and is worthless to Select Comfort.

The Court concludes that there are material facts in dispute which preclude summary judgment on the unjust enrichment claim of Select Comfort against Richeson. Therefore, to that extent, Richeson's motion for summary judgment is denied.

## IV. CONCLUSION

For the reasons set forth herein, plaintiff's entire complaint is dismissed for failure to state a claim, that is, for failure to assert any private cause of action under O.R.C. § 2913.49. Further, for the same reason, defendant's first claim for relief in the counterclaim/third-party complaint is also dismissed, along with the third claim for relief premised on the dismissed

first claim. The fourth claim for relief in the counterclaim has been voluntarily dismissed by the defendant.

The Court will conduct a telephone conference, with counsel only, on Thursday, November 10, 2011 at 2:45 p.m.[16] to determine whether the parties have any interest in mediation of the sole remaining claim.[17]

**IT IS SO ORDERED**.

Dated: November 8, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[16] The Court is aware that there is a pending motion filed by the defendant for leave to have its corporate representative attend the November 28, 2011 final pretrial by telephone. (*See* Doc. No. 59.) The Court will reserve ruling on this motion until after the telephone conference.

[17] Should the parties decide to proceed on the unjust enrichment claim, the Court will need to revisit the question of subject matter jurisdiction raised in note 2, *supra*. If it is true that plaintiff's complaint did not, from the outset, establish diversity jurisdiction, then this Court would also have no jurisdiction over the counterclaim.